# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **KEITH L. SLAUGHTER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION** |
| **v.** | ) | |
| | ) | **No. 13-2203-JWL** |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying Social Security Disability (SSD) benefits under sections 216(i) and 223 of the Social Security Act. 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act). Finding no error in the Commissioner's decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING that decision.

## I.    Background

Plaintiff applied for SSD benefits, alleging disability beginning May 24, 2009. (R. 18, 147-48). In due course, Plaintiff exhausted proceedings before the Commissioner, and now seeks judicial review of the final decision denying benefits. He alleges the Administrative Law Judge (ALJ) erred in multiple respects in her decision, and that the

decision is unsupported by substantial record evidence.  Specifically, he argues that the ALJ ignored his depression and failed in her duty to develop the record regarding mental impairments, that she "failed to adequately accommodate Plaintiff's limited education," that she failed to accord sufficient weight to the third-party statement of Plaintiff's mother, that she failed to include certain residual functional capacity (RFC) limitations suggested by record evidence, that she improperly relied upon Plaintiff's activities of daily living, and that she improperly relied upon conservative treatment to discount Plaintiff's allegations of disability.

The Commissioner argues to the contrary, that substantial record evidence supports the ALJ's decision.  She argues that the ALJ specifically considered Plaintiff's depression, but did not find any limitations resulting from it and that there was no duty to further develop the record regarding mental impairments because an ALJ is entitled to rely upon the claimant's counsel to structure and present his case, and counsel in this case represented to the ALJ that the record was complete.  She argues that the ALJ properly considered Plaintiff's limited education and that even if the ALJ had failed to consider limited education, that failure would be harmless error because the Medical-Vocational Guidelines note that, for a younger individual such as Plaintiff, even illiteracy and an inability to communicate in English have little significance.  The Commissioner notes that the ALJ considered and specifically discussed the third-party statement of Plaintiff's mother, and that more is not required under the law of the Tenth Circuit.  She argues that the ALJ's RFC assessment is supported by substantial record evidence, that she properly

2

considered Plaintiff's activities of daily living, and properly relied upon the fact that Plaintiff had only conservative treatment to discount Plaintiff's allegations.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether she applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is such evidence as a reasonable mind might accept to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's RFC.  20 C.F.R. § 404.1520(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the sequential process--determining at step four whether, in light of the RFC assessed, claimant can perform his past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the

4

economy which are within the RFC assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

## II.     Analysis

The court finds no error in the decision below.  Plaintiff's arguments primarily assert that the ALJ accorded insufficient weight to that record evidence which tends to support a finding that Plaintiff is disabled, and excessive weight to record evidence tending to support a finding that Plaintiff is not disabled.  To the extent that Plaintiff seeks to have the court reweigh the record evidence and substitute its judgment for that of the Commissioner, the court notes that it may not do so.  Bowman, 511 F.3d at 1272; accord, Hackett, 395 F.3d at 1172.  Moreover, Plaintiff must demonstrate the error in the ALJ's rationale or finding; the mere fact that there is evidence which might support a contrary finding will not establish error in the ALJ's determination.  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.  [The court] may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo."  Lax, 489 F.3d at 1084 (citations, quotations, and bracket omitted); see also, Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966) (same).   Therefore, where, as in this case, the ALJ has reached a reasonable conclusion that is supported by substantial evidence in the record, the court will not reweigh the evidence and reject that conclusion even if it might have reached a contrary conclusion in the first instance.

Contrary to Plaintiff's assertion that the ALJ ignored Plaintiff's depression, the ALJ specifically cited Dr. Lyche's diagnosis of depression.  (R. 26) (citing "[a] Swope Health Services treatment note," Ex. 12F/7-8 (R. 410-11)).  This note is the only mention of depression the court was able to find in a 532 page record containing 216 pages of medical records.  The diagnosis was made by Dr. Lyche at Plaintiff's first recorded visit with Dr. Lyche, the stated reason for that appointment was "Neck pain and headaches," depression is not mentioned in any of Dr. Lyche's other treatment notes, and Dr. Lyche did not treat Plaintiff for depression.  Yet, the ALJ specifically noted that diagnosis in her decision.

Plaintiff's assertion that he "was not only diagnosed with, but treated for, depression and he was noted to have an abnormal affect or low mood on multiple occasions" (Pl. Br. 15) (citing R. 323, 328, 363, 410-11, 414, 422, 430), is not supported by the record.  With the exception of Dr. Lyche's treatment note cited above, each of the records cited by Plaintiff is merely a passing reference in one of Plaintiff's treatment notes regarding affect or mood.  As noted above, Dr. Lyche did not treat Plaintiff for depression.  Moreover, none of the records cited by Plaintiff reveal treatment for depression or any other mental impairment.  One of the records cited by Plaintiff is a "Neurosurgery Physical Examination" in which an unnamed examiner merely circled the statement "low mood" on a pre-printed form.  (R. 363).

The remaining citations merely note in passing--a poor affect (R. 323), a frustrated affect (R. 327),[1] or a flat affect.  (R. 414, 422, 430).  The record at R. 323, in context, does not even support Plaintiff's assertion that he has a poor affect.  That record is a report by Dr. Galate, in which he noted that Plaintiff has a "poor affect," but Dr. Galate also noted that Plaintiff's "affect does not appear to be appropriate for his situation."  (R. 323).  The ALJ summarized that treatment note, and stated that Dr. Galate recognized inconsistencies throughout Plaintiff's exam, that Plaintiff shows poor effort on testing, and that "Waddell's is 4/5 today."  (R. 24) (citing Ex. 2F/4-6 (R. 323-25)).  A fair reading of Dr. Galate's note reveals that Dr. Galate found Plaintiff was, at best, exaggerating his symptoms and limitations.  In addition to the findings specifically cited by the ALJ, the note reveals that Plaintiff "had a completely invalid Functional Capacity Exam" which showed "manipulated effort" by Plaintiff, that there was "breakaway weakness in all major muscle groups tested," and that Plaintiff "underwent therapy with poor effort."  (R. 323).  The doctor stated that Plaintiff "showed self-limiting behavior" in therapy and his Functional Capacity Exam revealed "inconsistencies throughout testing."  (R. 324).  Dr. Galate summarized his findings:

> I have no further recommendations for the patient.  He failed his Functional Capacity Exam horribly and based off that he was lifting 12 pounds on testing, which is significantly not within his true functional status.  Based

---

[1]Plaintiff cited (R. 328), but that page mentions nothing regarding depression, mood, or affect, whereas (R. 327) is the first page of the same note by Dr. Galate in which the physician stated that Plaintiff's "affect looks frustrated."

off that, I cannot give the patient any permanent restrictions because I do
not know where he is at from a functional standpoint.

(R. 324).  This report cannot be viewed to support Plaintiff's argument in any respect.

One diagnoses of depression, in the context of this record, does not require further development, or even further discussion by the ALJ.  As Plaintiff suggests, an ALJ has a basic obligation in every Social Security case to ensure that an adequate record is developed during the disability hearing consistent with the issues raised.  Cowan v. Astrue, 552 F.3d 1182, 1187 (10th Cir. 2008).  But, "the claimant has the burden to make sure there is, in the record, evidence sufficient to suggest a reasonable possibility that a severe impairment exists."  Hawkins v. Chater, 113 F.3d 1162, 1167 (10th Cir. 1997).  If the claimant meets this burden, the ALJ's duty to order a consultative examination arises. Id.  "Isolated and unsupported comments by the claimant are insufficient, by themselves, to raise the suspicion of the existence of a nonexertional impairment."  Id.  On this record, Plaintiff has not even raised a reasonable possibility that a severe mental impairment exists.  Moreover, as the Commissioner suggests, an ALJ "may ordinarily require counsel to identify the issue or issues requiring further development."  Id., 113 F.3d at 1167. Here, counsel did not suggest further development was necessary, and in fact responded to the ALJ's inquiry, affirming that the record was complete.  (R. 39).  Plaintiff has shown no error in this regard.

Plaintiff's argument that the ALJ "failed to adequately accommodate Plaintiff's limited education," reveals a misunderstanding of the Social Security regulations.

8

Plaintiff argues that although the "ALJ noted Plaintiff's limited education," she also found "Plaintiff to be 'literate,'" and that this finding is "against the weight of the substantial evidence" because Plaintiff "was unable to pass a GED test which would constitute a high school equivalent." (Pl. Br. 16).

"Limited education" and "illiteracy" are terms which are defined by the Social Security Regulations, they have different meanings, and limited education is not equivalent to illiteracy.

> (1) Illiteracy. Illiteracy means the inability to read or write. We consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name. Generally, an illiterate person has had little or no formal schooling.
>
> . . .
>
> (3) Limited education. Limited education means ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs. We generally consider that a 7th grade through the 11th grade level of formal education is a limited education.

20 CFR § 404.1564(b).

The ALJ found that Plaintiff "has a limited education and is able to communicate in English." Record evidence supports this finding because the hearing was held in English, because there is simply no record evidence Plaintiff cannot communicate in English, because Plaintiff does not argue he cannot communicate in English, and because Plaintiff testified that he completed the 11th grade in school. (R. 42). Plaintiff also testified that he can add and subtract, and that he has a driver's license for which he

passed a written test.  (R. 43).  Moreover, Plaintiff did not argue that his reasoning, arithmetic, and language skills are such that he cannot perform unskilled jobs.  Rather, he argued that his physical abilities and his pain preclude work.

The ALJ also found that "[a]lthough he has a limited education, claimant is clearly literate as evidenced by Ex. 14E [(R. 261-74)], which he testified he completed."  This finding is also supported by the record evidence.  As the ALJ noted, he questioned Plaintiff at the hearing, and Plaintiff testified that it was his handwriting throughout exhibit 14E and that he printed his name on exhibit 14E as the person completing the form.  This evidence precludes a finding of illiteracy because Plaintiff's testimony indicates that he was able to read and write sufficiently to read the questions in exhibit 14E, a "Function Report - Adult," and to write the answers to the questions presented. (R. 267-74).  Moreover, in that report, Plaintiff indicated that he is capable of paying bills, handling a savings account, counting change, and using a checkbook/money order. (R. 270).  Plaintiff's eleventh grade education also supports finding that he is not illiterate.  That level of formal schooling is squarely within the general understanding of a "limited education" as presented in the Social Security regulations, and is contrary to the general understanding therein that "illiteracy" presumes little or no formal schooling.  It was not error for the ALJ to find that Plaintiff has a limited education but that he is not illiterate.

Plaintiff's argument that the ALJ did not accord sufficient weight to the third-party statement of his mother misunderstands the law in the Tenth Circuit.  In the Tenth Circuit,

10

an ALJ is required to consider each lay witness's opinion and the written decision must

reflect that the ALJ considered that opinion.  <u>Blea</u>, 466 F.3d at 914-15; <u>Adams v. Chater</u>,

93 F.3d 712, 715 (10th Cir. 1996).  In <u>Adams</u>, the court "decline[d] claimant's invitation

to adopt a rule requiring an ALJ to make specific written findings of each witness's

credibility, particularly where the written decision reflects that the ALJ considered the

testimony."  93 F.3d at 715.  The <u>Adams</u> court found "that the ALJ considered the

testimony of claimant's wife in making his decision because he specifically referred to it

in his written opinion," and the court found no error in the ALJ's failure to make specific,

written findings regarding that testimony.  <u>Id.</u>  Thirteen years later, the Tenth Circuit

confirmed the rule that an ALJ is not required to make specific written findings regarding

third-party testimony, so long as the written decision reflects that the ALJ considered that

testimony.  <u>Blea</u>, 466 F.3d at 915.

      In <u>Blea</u>, the plaintiff argued that remand was necessary because the ALJ failed to

discuss or consider the lay testimony of the plaintiff's wife.  <u>Blea</u>, 466 F.3d at 914.  The

Commissioner's decision in <u>Blea</u> did not mention any particulars of Mrs. Blea's

testimony, and never even mentioned that she had testified regarding the nature and

severity of her husband's impairments.  <u>Id.</u> at 914.  The Commissioner argued that there

was no reversible error because the ALJ is not required to make written findings about

each witness's credibility.  <u>Id.</u>  The court noted that the Commissioner had stated only

part of the rule in the Tenth Circuit and corrected the Commissioner, "[i]n actuality, the

ALJ is not required to make specific written findings of credibility only if 'the written

decision reflects that the ALJ considered the testimony.'" Id. at 915 (quoting Adams, 93

F.3d at 715).  The Blea court noted that the ALJ had not mentioned Mrs. Blea's testimony

or referred to the substance of her testimony anywhere in the written decision, and

concluded that "it is not at all clear that the ALJ considered Mrs. Blea's testimony in

making his decision."  Id. (internal quotation marks, brackets, and citation omitted).

Therefore, the case was remanded to consider Mrs. Blea's testimony properly.  Id.

The law in the Tenth Circuit is clear with regard to opinion testimony or

statements from lay witnesses such as spouses, parents, friends, and neighbors.  The

decision must reflect that the ALJ included the opinion in his consideration of disability,

but she need not specify the weight accorded to that opinion.  As Plaintiff admits, the ALJ

considered, summarized, and discussed the functional report completed by Plaintiff's

mother.  (Pl. Br. 16-18) (citing R. 22-23).  Plaintiff argues that the ALJ cited Plaintiff's

mother's report with approval when assessing credibility, but failed to "explain how she

weighed the remainder of [Mrs.] Slaughter's reports in assessing symptoms and RFC.  Id.

at 18.  The court does not agree with the premise that the ALJ cited Mrs. Slaughter's

report with approval when assessing credibility.  At pages 4 and 5 of her decision, the

ALJ summarized Plaintiff's allegations regarding symptoms and limitations resulting

from his impairments.  (R. 21-22).  Immediately thereafter, she summarized Mrs.

Slaughter's report, beginning "Similarly, the functional report completed by Anna

Slaughter, the claimant's mother, indicates . . ."  (R. 22).  She summarized the limitations

opined by Mrs. Slaughter which are similar to the symptoms and limitations alleged by

Plaintiff.  (R. 22-23).  Thereafter, she summarized the remainder of the record evidence.
(R. 23-26).  Then, she analyzed the evidence regarding credibility, found that Plaintiff's
allegations "are not credible," and explained her reasons for so finding.  (R. 26-27).  On
this record, it is clear that the ALJ found Mrs. Slaughter's opinions to be similar to
Plaintiff's allegations, and discounted their credibility for the same reasons she
discounted the credibility of Plaintiff's allegations.  That is all that is required in the
Tenth Circuit.  Plaintiff has shown no error in the consideration of Mrs. Slaughter's
opinion.

Plaintiff's argument that the ALJ did not include certain limitations in her RFC
assessment is merely an invitation to the court to reweigh the evidence and substitute its
judgment for that of the ALJ.  As discussed above, it will not do so.  Moreover, the
decision includes discussion of the record evidence to which Plaintiff alludes:  a cut
finger (R. 25), decreased sensation in Plaintiff's right index finger (R. 24), left fingers
weaker than the right (R. 26), limited extension and flexion of Plaintiff's cervical spine,
flattening of the normal cervical curvature, Plaintiff's head 1+ forward flexed (R. 23), and
one physician observed Plaintiff "at the end of the clinical examination assisting his
young child putting on a jacket.  The patient was leaning over, bending, and his neck
range of motion was dramatically improved compared to what was observed during
clinical examination."  (R. 25) (quoting Ex. 10F/4 (R. 393)).  Plaintiff points to no
evidence which was demonstrably not considered by the ALJ, and the court may not
reweigh the evidence.

Plaintiff's allegation of error in the ALJ's consideration of his activities of daily living and in the ALJ's finding regarding conservative treatment is to a similar effect with regard to the ALJ's credibility determination.  As Plaintiff asserts, in making her credibility determination the ALJ considered Plaintiff's activities of daily living (R. 25), and also found that Plaintiff "has received only conservative treatment for his maladies." (R. 26) (citing Ex. 10F/6 (R. 395)).  Plaintiff argues that limited activities of daily living are not substantial evidence to support the ALJ's decision, and that the treatment of his condition was "aggressive" conservative treatment.  (Pl. Br. 19-20) (citing R. 324).

To be sure, when Dr. Galate released Plaintiff from his care, he stated that Plaintiff "has undergone aggressive conservative treatment."  (R. 324).  However, the ALJ acknowledged Dr. Galate's statement that Plaintiff "has undergone aggressive conservative treatment."  (R. 24) (quoting Ex. 2F/4-6 (R. 323-25)).  Nevertheless, that statement was in the context of Dr. Galate's letter which has already been discussed above, and in which Dr. Galate noted that Plaintiff was exaggerating his symptoms.  See, supra at 7-8.  Moreover, when explaining her bases for finding Plaintiff's allegations not credible, the ALJ stated:

> There is evidence that the claimant was less than fully cooperative or put forth less than maximal effort during examinations.  On the September 1, 2009, functional capacity evaluation performed in connection with his workers' compensation claim, the evaluator found the claimant's performance to be manipulated and thus invalid (Ex. 2F/4 [(R. 323)]).  The examiner noted poor effort and inconsistencies in his performance throughout (Ex. 2F/5 [(R. 324)]).  When Dr. Galate examined the claimant on September 9, 2009, he found Waddell's was 4/5, which is indicative of exaggerated pain complaints.  Dr. Galate notes the claimant has been on

aggressive conservative treatment and on appropriate medicine with no significant response reported (Ex. 2F/5 [(R. 324)]).

The undersigned found the claimant's testimony at the hearing was exaggerated. He testified to constant pain and constant headaches which no treatment or medication helps; there is nothing that eases or makes the pain worse, according to claimant it just stays the same. He is dizzy, has a headache and neck pain all day every day. Claimant has never been diagnosed with a concussion or any head injury from his workers' compensation injury despite being thoroughly tested and examined by different doctors. In fact, he denied any loss of consciousness at the time of his injury when he reported the facts surrounding his injury to Dr. Galate on July 8, 2009.

(R. 27).

The court's review of an ALJ's credibility determination is deferential. Such determinations are generally treated as binding on review. Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990); Broadbent v. Harris, 698 F.2d 407, 413 (10th Cir. 1983). "Credibility determinations are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence. Wilson, 602 F.3d at 1144; accord Hackett, 395 F.3d at 1173.

Therefore, in reviewing the ALJ's credibility determinations, the court will usually defer to the ALJ on matters involving witness credibility. Glass v. Shalala, 43 F.3d 1392, 1395 (10th Cir. 1994); but see Thompson v. Sullivan, 987 F.2d 1482, 1490 (10th Cir. 1993) ("deference is not an absolute rule"). "However, '[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'" Wilson, 602 F.3d at 1144 (quoting Huston v Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988)); Hackett, 395 F.3d at 1173 (same).

As quoted above, the ALJ's credibility findings are closely and affirmatively linked to substantial record evidence, and affording the ALJ's determination the deference of which it is due, the court finds no error.

Plaintiff has shown no error in the decision below.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING that decision.

Dated this 18th day of July 2014, at Kansas City, Kansas.

s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**

16